# 20-2721

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

JONATHAN RUBIN, on behalf of plaintiff and a class,
*Plaintiff–Appellant,*

v.

MONTEFIORE MEDICAL CENTER,
*Defendant–Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF OF DEFENDANT–APPELLEE
MONTEFIORE MEDICAL CENTER**

Tadhg Dooley
John M. Doroghazi
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06510
(203) 498-4400
tdooley@wiggin.com
jdoroghazi@wiggin.com

*Attorneys for Defendant–Appellee
Montefiore Medical Center*

## CORPORATE DISCLOSURE STATEMENT

Defendant–Appellee Montefiore Medical Center states that its parent

corporation and any publicly held corporation that owns 10% or more of its stock is

Montefiore Health System, Inc.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................1

STATEMENT OF FACTS AND PROCEEDINGS ...............................6

   I.     Factual Background ...................................................................6

      A.   Rubin is treated at Montefiore and receives bills for his treatment................6

      B.   After Rubin fails to pay his balance, Montefiore's receivables department sends the Letter requesting payment. ..........................................8

      C.   Procedural History ...................................................12

SUMMARY OF ARGUMENT ...............................................................13

ARGUMENT ..........................................................................................14

The District Court properly entered summary judgment in Montefiore's favor because it is not a "debt collector" subject to the FDCPA .........................14

      A.   The FDCPA does not apply to Montefiore because it is not a debt collector. ......................................................14

      B.   The false-name exception does not apply...............................................16

         1.   Montefiore did not "use" a name other than its own. ..............................19

         2.   The letter does not falsely indicate that a third party is attempting to collect the debt. ..................................................22

      C.   Rubin's reading of the Letter and of relevant authority is unpersuasive........29

         1.   Rubin's arguments about the form and style of the Letter are unavailing..29

         2.   The cases Rubin relies on are readily distinguishable. ..............................34

CONCLUSION .......................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. LaSalle Bank, N.A.,*
2012 WL 1898612 (D.N.J. 2012) .................................................................2

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...............................................................................39

*Athens v. Transworld Sys., Inc.,*
765 F. Supp. 162 (D. Del. 1991) ...................................................17, 30

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ...............................................................................39

*Bodur v. Palisades Collection, LLC,*
829 F. Supp. 2d 247 (S.D.N.Y. 2011) ..............................................19

*Button v. GTE Serv. Corp.,*
1996 WL 943904 (W.D. Mich. 1999) .........................................20, 28

*Campagna v. Client Servs., Inc.,*
2019 WL 6498171 (E.D.N.Y. 2019) .....................................................1

*Carlson v. Long Island Jewish Medical Center,*
378 F. Supp. 2d 128 (E.D.N.Y. 2005)..............................34, 38, 39

*Castro v. Green Tree Servicing LLC,*
959 F. Supp. 2d 698 (S.D.N.Y. 2013) ...............................................18

*Catencamp v. Cendant Timeshare Resort Group–Consumer Finance, Inc.,*
471 F.3d 780 (7th Cir. 2006) .........................................................34, 36

*Catherman v. Credit Bureau of Greater Harrisburg,*
634 F. Supp. 693 (E.D. Pa. 1986) ........................................................17

*Clomon v. Jackson,*
   988 F.2d 1314 (2d Cir. 1993) ...............................................................18

*Colman v. North Shore Health System,*
   1998 WL 34077715 (E.D.N.Y. 1998).................................................26

*Conley v. Gibson,*
   355 U.S. 41 (1957) ...............................................................................39

*D'Avanzo v. Global Credit & Collection Corp.,*
   2011 WL 2297697 (D. Colo. 2011) .....................................................2

*Ekinici v. GNOC Corporation,*
   2002 WL 31956011 (E.D.N.Y Dec. 31, 2002) ....................34, 37, 38

*Ellis v. Solomon and Solomon, P.C.,*
   591 F.3d 130 (2d Cir. 2010) ...............................................................18

*Federal Home Loan Mortgage Corp. v. Lamar,*
   503 F.3d 504 (6th Cir. 2007) ................................................................1

*Jacobson v. Healthcare Financial Services, Inc.,*
   434 F. Supp. 2d 133 (E.D.N.Y. 2006)...............................................1, 2

*Johnson v. Hamilton Point Property Management, LLC,*
   2017 WL 8186857 (ND. Ga. Nov. 8, 2017) .......................................20

*King v. Time Warner Cable Inc.,*
   894 F.3d 473 (2d Cir. 2018) ...............................................................14

*Kraus v. Professional Bureau of Collections of Maryland, Inc.,*
   281 F. Supp. 3d 312 (E.D.N.Y. 2017)...............................................1, 2

*Marcotte v. Bank of America,*
   2015 WL 2184369 (S.D. Tex. May 11, 2015)...............................24, 26

*Maguire v. Citicorp Retail Services, Inc.,*
   147 F.3d 232 (2d Cir. 1998) ........................................................*passim*

iv

*Mahan v. Laboratory Corporation of America*,
2011 WL 836674 (S.D. Ala. 2011)........................................................23, 24, 30

*Mazzie v. The Money Store*,
349 F. Supp. 2d 651 (S.D.N.Y. 2004) ...............................................16

*Nitzkin v. Craig*,
324 Mich. App. 675 (2018) ..............................................34, 37, 38

*Northrup v. American Express Co.*,
2010 WL 3894488 (N.D. Okla. 2010) ...............................................26

*Nunez v. Mercantile Adjustment Bureau, LLC*,
2020 WL 2475619 (S.D.N.Y. May 13, 2020) ...............................................23

*Pappenfuss v. Receivable Management Services Corp.*
2013 WL 5417891 (E.D. Wis. 2013) ...............................................1

*Russell v. Equifax A.R.S.*,
74 F.3d 30 (2d Cir. 1996)...............................................1

*Scalabrini v. PMAB, LLC*,
2020 WL 1049167 (S.D.N.Y. Mar. 3, 2020)...............................................20, 23

*Schweizer v. Trans Union Corp.*,
136 F.3d 233 (2d Cir. 1998) ...............................................17, 18, 19

*Seplak v. IMBS, Inc.*,
1999 WL 104730 (N.D. III. Feb. 23, 1999)...............................................17, 23

*South v. Midwestern Audit Services*,
2010 WL 5089862 (E.D. Mich. 2010) ...............................................16, 22

*Vincent v. The Money Store*,
736 F.3d 88 (2d Cir. 2013) ...............................................*passim*

*Porter v. Wachovia Dealer Services, Inc.*,
2007 WL 2694470 (D. Or. 2007) ...............................................26

**Statutes**

15 U.S.C. § 1692(d) ............................................................................39

15 U.S.C. § 1692(e) ...................................................................3, 15, 16

15 U.S.C. § 1692a(6) ...................................................................*passim*

**Other Authorities**

26 C.F.R. § 1.501(r)-6 .......................................................................27

26 C.F.R. § 1.501(r)-6(c)(4) ...............................................................27

77 Fed. Reg. 38158, 38155 ...............................................................27

S. Rep. No. 95–382, 95th Cong., 1st Sess., reprinted in 1977 U.S. Code
  Cong. & Admin News 1695, 1696. ...........................................15, 16

## PRELIMINARY STATEMENT

Congress enacted the Fair Debt Collection Practice Act ("FDCPA") to provide unsophisticated consumers with "a shield against the overly zealous debt collector," *Russell v. Equifax A.R.S.*, 74 F.3d 30, 32 (2d Cir. 1996), not to arm sophisticated consumers with a "sword" to wield against good-faith collectors or creditors, *Kraus v. Prof. Bureau of Collections of Md., Inc.*, 281 F. Supp. 3d 312, 324 (E.D.N.Y. 2017). But, as numerous courts have observed, "it appears that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by this statute, not the individual that has been threatened or misled." *Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007) (quoting *Jacobson v. Healthcare Financial Servs., Inc.*, 434 F. Supp. 2d 133, 138 (E.D.N.Y. 2006)). As a result, district judges—who have to manage the thousands of FDCPA lawsuits filed every year—have lamented the transformation of "FDCPA litigation into a glorified game of 'gotcha,' with a cottage industry of plaintiffs' lawyers filing suits over fantasy harms the statute was never intended to prevent." *Kraus*, 281 F. Supp. 3d at 322.[1]

---

[1] *See also, e.g.*, *Campagna v. Client Servs., Inc.*, 2019 WL 6498171, at *6 n.6 (E.D.N.Y. 2019) ("[T]he FDCPA is intended to prevent debt collectors from trying to trap unsophisticated debtors and is not intended as a trap for compliant debt collectors."); *Pappenfuss v. Receivable Mgmt. Servs. Corp.* 2013 WL 5417891, at *1 (E.D.

1

Plaintiff–Appellant Jonathan Rubin may not be a "professional plaintiff," *Jacobson*, 434 F.3d at 138, but there is little doubt that he complains here of a "fantasy harm," *Kraus*, 281 F. Supp. 3d at 322. After receiving care from Defendant–Appellee Montefiore Medical Center in May 2018, Rubin failed to pay all of his bill. Montefiore sent several statements over the ensuing months, each of which showed a past-due amount of $94.39 and each of which went unanswered. Montefiore then sent a follow-up letter (the "Letter") reminding Rubin of the past-due amount he owed for "services provided by Montefiore Medical Center and its providers." JA160. In addition to identifying the past-due amount of $94.39, the Letter notified Rubin that his "overall account balance" was $355.99. *Id.* Rather than pay his balance, or even just the overdue amount, Mr. Rubin hired a Chicago-based plaintiff's law firm to bring a putative class-action lawsuit against Montefiore for violating the FDCPA.

---

Wis. 2013) ("The prospect of attorneys' fees and the volume of alleged violations of the FDCPA has resulted in the development of a cottage industry for both plaintiffs and defense attorneys specializing in these sorts of actions and a proliferation of FDCPA litigation in courts."); *Allen v. LaSalle Bank, N.A.*, 2012 WL 1898612, at *6 (D.N.J. 2012) ("The FDCPA was not passed in order to sprout a cottage industry for lawyers who self-interestedly battle over attorney's fees in federal court."); *D'Avanzo v. Global Credit & Collection Corp.*, 2011 WL 2297697, at *5 (D. Colo. 2011) ("[T]he FDCPA seeks to prevent abusive, deceptive, and unfair debt collection practices. I do not believe that laudable goal and the FDCPA's strict liability should be transformed into a vehicle for 'gotcha' litigation.").

The FDCPA is designed to "eliminate *abusive* debt collection practices *by debt collectors*." 15 U.S.C. § 1692(e).[2] There is nothing remotely abusive about Montefiore's Letter—which provided several payment options as well as information about "Montefiore's Financial Assistance Program," JA160–61—and Montefiore is not, in any event, a "debt collector." It is a creditor and is therefore not subject to the FDCPA to begin with. *See infra* at 14–16.

Rubin argues that the FDCPA applies (and was violated) because Montefiore allegedly used another name, Tele-Computer Systems, in the Letter. Under the so-called false-name exception, "any creditor who, in the process of collecting his own debts, uses any name other than his own, *which would indicate that a third person is collecting or attempting to collect* such debts," qualifies as a "debt collector" subject to the FDCPA. 15 U.S.C. § 1692a(6). But Tele-Computer Systems is not a "false name" assumed by Montefiore to harass its patients; it is the name of the software program used by Montefiore's receivables department when the template for the Letter was created.

The purpose of the false-name exception is to prevent creditors from using abusive collection practices under an assumed name while still maintaining goodwill

---

[2]    Here and elsewhere in this brief, unless otherwise noted, emphases have been added to quotations and internal quotation marks, brackets, and ellipses removed.

with their customers. Under this Court's precedents, the false-name exception applies only where "(1) the creditor is collecting its own debts; (2) the creditor 'uses' a name other than its own; and (3) the creditor's use of that name falsely indicates that a third person is collecting or attempting to collect the debts that the creditor is collecting." *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013). The exception (and therefore the FDCPA) does not apply here because Montefiore did not "use" a false name, and certainly did not do so in a manner falsely indicating that a third person was trying to collect Rubin's debt. *See infra* at 19–29.

The name "Tele-Computer Systems" appears just twice on the Letter: on the address line at the top, and in a separate address on the payment slip. In each place, the name is followed by the same P.O. Box and zip code as appears in Montefiore's previous billing statements. By contrast, the name "Montefiore Medical Center" appears seven times in the body of the Letter, including in the portion explaining where Rubin should direct his payment. That section identified three ways to pay the past due amount: (1) "online at MyChart at www.mychart.montefiore.org;" (2) by phone at a number that is automatically answered with the words "thank you for calling the Business Office of Montefiore;" or (3) by "send[ing] a check or money order payable to Montefiore Medical Center." JA160. The Letter also advised Rubin of "Montefiore's Financial

4

Assistance program," and assured him that "Montefiore Medical Center values you as a patient and appreciates you choosing Montefiore for your medical needs." JA161. In closing, the Letter thanked Rubin "for choosing Montefiore Medical Center; it is a privilege to care for you." *Id.* Not even the proverbial "least sophisticated consumer" could read this letter and believe it came from anyone other than Montefiore Medical Center.

On appeal, Rubin misrepresents the contents of the Letter, focusing almost exclusively on the first lines of the return address and payment slip, which included the words "Tele-Computer Systems" as a means of directing mail to Montefiore's billing office. *See infra* at 29–34. But taken as a whole, there is no way that even an unsophisticated consumer would believe that Montefiore's Letter—which directed payment to Montefiore via the MyChart patient portal, advised Rubin of Montefiore's Financial Assistance program, thanked him for choosing Montefiore, and stated that "it is a privilege to care for you"—was actually a letter from a third-party debt collector. Therefore, the District Court correctly concluded that the false-name exception does not apply and granted Montefiore's motion for summary judgment. Rather than reward Rubin's "glorified game of gotcha," this Court should affirm.

5

## STATEMENT OF FACTS AND PROCEEDINGS

**I.      Factual Background**

**A.      Rubin is treated at Montefiore and receives bills for his treatment.**

On May 3, 2018, Jonathan Rubin visited Montefiore Medical Center and received medical treatment. JA720; JA143–44. Two weeks later, Montefiore sent a billing statement ("the May Statement") for that treatment, totaling $447.95. JA720; JA 143–44. Rubin paid the amount due over the phone. JA147 (audio file); JA149; JA236–37. Thereafter, he incurred additional charges for pathology services related to his May 3rd visit. JA721; JA152.[3] Montefiore sent a second billing statement on July 3rd, showing that—after previous payments from Rubin and his insurance company were deducted—he still owed Montefiore $94.39 for treatment. JA151–52. When Rubin didn't respond, Montefiore sent a third billing statement on July 31st, and a fourth on August 28th (the "August Statement"), both showing the same $94.39 balance due. JA154–58.

_____

[3]      Rubin has vigorously contested this second charge. *See* JA721. His frustration at seeing another bill after believing he'd fully paid over the phone may explain why he decided to file a lawsuit. *See* JA164 (audio file). But it has nothing to do with the claims in his lawsuit, which does not allege that the underlying charges were improper. *See generally* JA1-28.

The four billing statements Rubin received—May 15, July 3, July 31, and August 28—contain virtually identical information. *Compare* JA143–44, 151–52, 154–55, 157–58. They each list his "account" or "guarantor" number as 2687933. They each provide three payment options:

- Online: Pay your bill or pose a question to one of our representatives online at mychart.montefiore.org.
- Mail: Pay your bill by mailing your payment with the top portion of your bill in the enclosed envelope.
- Call: Pay your bill over the phone at **(914) 864-4000**.[4]

JA143, 151, 154, 157 (bold type in original). Each instructed that, if paying by mail, Rubin should make his check payable to "Montefiore Medical Center" and mail it to Montefiore at "P.O. Box 4738" in "New York, NY 10261-4738." There is no dispute that Montefiore sent each of these billing statements. JA720*, 722.

Significantly, each of the initial billing statements refers to Montefiore's online patient portal, mychart.montefiore.org. MyChart is an online patient platform used by many hospitals and medical providers to allow patients to easily oversee and manage their care. JA733. A patient who logs onto MyChart with her username and password

---

[4]     As noted above, Rubin chose to pay the balance of the May Statement by calling the numbers listed. *See supra* at 6; JA147 (audio file). When he called, the line was answered by a recording that said, "thank you for calling the Montefiore Billing Office." JA147.

can review test results, contact her doctor, schedule an appointment, and pay outstanding balances. *Id.*; JA1324–29. A patient's MyChart profile contains a significant amount of HIPAA-protected information, which only the patient and her healthcare provider may access. *Id.* Though Rubin has never accessed MyChart personally, he testified that he knew that these initial statements were from Montefiore because they listed the website mychart.montefiore.org. JA722; JA316–17.

### B. After Rubin fails to pay his balance, Montefiore's receivables department sends the Letter requesting payment.

When Rubin failed to pay his balance after receiving several billing statements, his account was referred to Montefiore's internal receivables unit. *See* JA160. Montefiore then sent the Letter at issue in this case in September 2018. JA724; JA160–61. The practice of sending a follow-up letter to remind a patient of a past-due amount is consistent with industry standards. JA723; JA414; JA480–81.

The Letter's return address is "Tele-Computer Systems, P.O. Box 4738, New York, NY 10261-4738." JA726; JA160–61. Tele-Computer Systems is the name of the software program that the receivables department used at the time the template for the Letter was created. JA734; JA471. It is undisputed that the receivables department is still colloquially known as "Tele-Computer Systems," at least among Montefiore employees involved in billing and collection. *Id.*; JA398–99; JA472.

8

Because the Letter came from the receivables department, it has a different style and format than the earlier billing statements Rubin had received. Nevertheless, it shares all of the salient characteristics identified above. *Compare* JA160–61 *with* JA143–44, 151–52, 154–55, *and* 157–58. It identifies Rubin by his account/guarantor number, 2687933. JA160. It provides the same three payment options:

- Online at MyChart at www.mychart.montefiore.org
- Over the phone by credit card at 1-347-577-4960.[5] When prompted, please enter your Guarantor ID number.
- By mail — please send a check or money order payable to Montefiore Medical Center.

*Id.* And, though the return address includes the name "Tele-Computer Systems" (so as to properly direct mailings to the receivables department), the Letter lists the same address as in the billing statements: P.O. Box 4738, New York, NY, 10261-4738. *Id.*

The content of the Letter confirms that it is an effort by Montefiore to collect its own debt. The first line states that, "[a]ccording to *our records*, you are responsible for a past due balance of $94.39 and your account has been referred to *our unit* for follow

---

[5]     Although this phone number is different from the one listed on the initial billing statements, it is also answered by a recording that identifies Montefiore as the recipient of the call. JA164 (audio file) (automated recording states "thank you for calling the Business Office of Montefiore"); *see also supra* n. 4. Rubin dialed the number to complain about new charges reflected in the Letter, *see* JA164 (audio file), and admits that he was not confused who he called. JA732-33.

up." *Id.* The Letter goes onto state that Rubin has an "*overall* account balance" (including amounts not overdue) of $355.99 and makes clear that "[t]hese balances are related to services provided by Montefiore Medical Center and its providers." *Id.* This "overall" sum is greater than the $94.39 past-due amount because, at the time the Letter was sent, an additional $261.60 charge related to medical care Rubin received on May 3, 2018, had accrued. JA731. As noted, the Letter offers payment options including Montefiore's patient portal, www.mychart.montefiore.org; a phone number that is answered by "the Business Office at Montefiore;" and payment by "check or money order *payable to Montefiore Medical Center*." *Id.*

Finally, the back side of the Letter (which Rubin failed to include with his initial complaint, *see infra* at 12), erases any possibility of confusion about who is attempting to collect payment:

> Failure to make payment in full on your overdue balance or contact our customer service center may result in further collection activity. It would be preferred not to take additional action as *Montefiore Medical Center values you as a patient and appreciates you choosing Montefiore for your healthcare needs.*
>
> **If you are uninsured and would like information on applying for free or low c[o]st health insurance or Montefiore's Financial Assistance program, please call us at 1-347-577-4960, Monday-Friday between the hours of 9:30 a.m. and 6:00 p.m. and a representative will assist you.**

> We appreciate your prompt attention. *Thank you for choosing Montefiore Medical Center; it is a privilege to care for you.*

JA161 (bold type in original). In all, the Letter refers to "Montefiore" seven times and twice thanks Rubin for being a patient of Montefiore. JA160–61.

When Rubin received the Letter, he was annoyed to see additional charges, given that he believed he had already paid in full over the phone in May. *See* JA163.[6] He called the number listed on the Letter on September 11, 2018. JA732; JA163. After Rubin dialed, a recorded voice answered, "thank you for calling the Business Office of Montefiore." JA731. Rubin selected the option to speak with a live staff member, and a recording of his conversation with that staff member is in the record. *See* JA164 (audio file). The recording makes clear that Rubin was looking at both the August Statement and the Letter during the conversation. JA732; JA164 (audio file). Rubin expressed no confusion about the source of the Letter, but rather complained (in a sometimes aggressive and abusive tone), that he was upset that he still owed money for his medical care despite his prior payments. *Id.*

---

[6] Rubin does not specifically recall reading either side of the Letter before making this phone call, though he believes he read the front side. JA725.

### C.     Procedural History

About two months after receiving the Letter, Rubin filed this putative class-action lawsuit. JA12. Rubin's operative Complaint, JA1443–71, alleges that Montefiore violated the FDCPA "by sending or having letters sent using the fictitious name 'Tele-Computer Systems.'" JA1445. The Complaint alleges no abusive debt-collection practices, and no misstatement of the amount Rubin owed. *See* JA1443–71. Rubin sought to represent a class of plaintiffs who had received similar letters, for which he sought damages in excess of $500,000, the statutory maximum, as well as attorney's fees. JA1450. When Rubin filed his original complaint, he attached the front side, but not the back side, of the Letter. JA12. (The omission was not corrected until March 2020, more than fifteen months after the initial complaint was filed. JA1598.)

After expansive discovery, Montefiore moved for summary judgment.[7] It argued that the FDCPA does not apply to it, as a creditor collecting its own debts, and that the false-name exception does not apply because even the least sophisticated consumer would understand the Letter was sent by Montefiore. JA116–135.

---

[7]     The parties waived the right to a jury trial, JA1592, meaning that the District Judge, had she denied summary judgment, would also have been the finder of fact.

The District Court granted Montefiore's motion. *See* JA1590–1600. Applying the three-part test this Court set out in *Vincent*, 736 F.3d at 98, the District Court concluded that the Letter did not trigger the false-name exception, and therefore Montefiore could not be held liable under the FDCPA for seeking to collect its own debt. JA1599. Although the District Court recognized that "the Letter does not contain [Montefiore's] typical branding," it faulted Rubin for "focus[ing] on what is different between the two communications and pay[ing] no mind to what is the same." JA1597. Examining the Letter "as a whole," the District Court found that it "would not deceive even the least sophisticated debtor into thinking that the collection effort was being made by an unrelated third party." JA1595.

## SUMMARY OF ARGUMENT

The District Court properly granted Montefiore's motion for summary judgment because it is not a "debt collector" subject to the FDCPA. *See infra* at 14–16. Although a creditor may be held liable under the FDCPA where it uses a "name other than its own which would indicate that a third person is collecting or attempting to collect such debts," 15 U.S.C. § 1692a(6), here the District Court properly concluded that this so-called "false name exception" does not apply. Montefiore did not "use a name other than its own;" it used its own name seven times and the name of its internal

13

receivables unit twice. This is not the type of active misrepresentation that satisfies the "use" element of the false-name exception. *See infra* at 19–22. And Montefiore certainly did not use a false name in a manner that would indicate that a third party was collecting its debt. The Letter, viewed as a whole, made clear even to the least sophisticated consumer that Montefiore was attempting to collect its own debt. *See infra* at 16–29. Rubin attempts to escape this conclusion by overstating insignificant features of the Letter and misreading this Court's precedents. *See infra* at 29–38. Properly viewed, the Letter is plainly not the type of abusive debt-collection practice that the FDCPA was intended to police.

## ARGUMENT

### The District Court properly entered summary judgment in Montefiore's favor because it is not a "debt collector" subject to the FDCPA.[8]

### A. The FDCPA does not apply to Montefiore because it is not a debt collector.

The purpose of the FDCPA is "to eliminate *abusive* debt collection practices *by debt collectors*, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent

---

[8] This Court reviews a district court's order granting summary judgment *de novo*. *E.g. King v. Time Warner Cable Inc.*, 894 F.3d 473, 476 (2d Cir. 2018).

State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

Congress enacted the statute against a backdrop of widespread abuse by third-party debt collectors, "including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials, and simulating legal process." S. Rep. No. 95-382, at 2 (1977).

By its terms, the FDCPA applies only to "debt collectors," which the statute defines to include "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be *owed or due another*." *Id.* § 1692a(6). The FDCPA does not, therefore, apply to creditors attempting to collect *their own* debts. *See, e.g.*, *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998). Congress concluded that creditors need not be subject to the FDCPA because they "generally are restrained by the desire to protect their good will when collecting past due amounts," and therefore less likely than "independent collectors" to use abusive tactics. S. Rep. No. 95-382, 95th Cong., 1st Sess., reprinted in 1977 U.S. Code Cong. & Admin News 1695, 1696.

Here, it is undisputed that Montefiore is (in actual fact) a creditor, and not a

debt collector. Montefiore is therefore immune from liability under the FDCPA, unless the false-name exception to creditor immunity applies. It doesn't.

### B. The false-name exception does not apply.

Under the false-name exception, a creditor may be treated as a debt-collector subject to the FDCPA only if the creditor, "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). The purpose of the exception is "to prevent deceit as to who is actually collecting [a] debt." *Mazzie v. The Money Store*, 349 F. Supp. 2d 651, 658 (S.D.N.Y. 2004) (citing *Maguire*, 147 F.3d at 236). Congress recognized "that where a creditor uses a 'false name' to collect its own debts[,] it may abandon restraint—the creditor can hide behind a pseudonym and harass its delinquent customers without suffering the reputation-related consequences." *South v. Midwestern Audit Servs.*, 2010 WL 5089862, at *14 (E.D. Mich. 2010) (citing S. Rep. No. 95–382, at 2). The exception is thus consistent with the FDCPA's overall purpose of preventing *abusive* debt-collection practices, without disadvantaging collectors and creditors who refrain from such practices. 15 U.S.C. § 1692(e).

This Court has held that three elements "must be satisfied before deeming a creditor a debt collector pursuant to the false name exception: (1) the creditor is

collecting its own debts; (2) the creditor 'uses' a name other than its own; and (3) the creditor's use of that name falsely indicates that a third person is 'collecting or attempting to collect' the debts that the creditor is collecting." *Vincent*, 736 F.3d at 98. Three overarching principles guide a court's analysis of whether these elements are satisfied in a given case.

*First*, the court "must read the letter [at issue] in its entirety, not seek out isolated words or phrases that, absent context, might confuse." *Seplak v. IMBS, Inc.*, 1999 WL 104730 at *3 (N.D. Ill. Feb. 23, 1999); *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 238 (2d Cir. 1998) (assessing whether debtor would be deceived by communication "taken as a whole"). Nor can a plaintiff ignore the context surrounding the communication at issue. *See Athens v. Transworld Sys., Inc.*, 765 F. Supp. 162, 169 n. 7 (D. Del. 1991) (when deciding FDCPA claim, "the Court will consider the language in all the letters together, and not just the language containing a particular notice."); *Catherman v. Credit Bureau of Greater Harrisburg*, 634 F. Supp. 693, 695 (E.D. Pa. 1986) (in determining the likely effect of collection letters, all of the notices must be read together rather than in isolation); *see generally Schweizer*, 136 F.3d at 238 (concluding that the letter at issue "taken as a whole" did not violate the FDCPA).

*Second*, as with other "potential violations of the FDCPA, the court must use an

objective standard based on whether the 'least sophisticated consumer' would be deceived by the collection practice." *Maguire*, 147 F.3d at 236. This standard is designed "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). Yet, "in crafting a norm that protects the naïve and the credulous[,] the courts have carefully preserved the concept of *reasonableness*." *Id.* at 1319. The hypothetical least sophisticated consumer "is neither irrational nor a dolt," *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010), and would not engage in "bizarre or idiosyncratic interpretations" of collection letters, *Clomon*, 988 F.2d at 1319–20. On the contrary, "even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* at 1318–19. Thus, "courts have consistently applied the least-sophisticated-consumer standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices." *Id.*

*Finally*, this Court "has indicated that because the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendants' collection letter is a question of law." *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 707 (S.D.N.Y. 2013) (citing *Schweizer*, 136

F.3d at 237–38); *see also Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 247, 253 (S.D.N.Y. 2011) ("In the Second Circuit, the least sophisticated consumer standard may be applied as a matter of law and thus is an appropriate issue for disposition on a motion for summary judgment.").[9]

Applying these standards, the District Court properly reviewed the Letter in its complete context and concluded, as a matter of law, that even the least sophisticated consumer would not believe it was an attempt to collect debt by a third-party debt collector. In particular, the court properly concluded that Rubin could not satisfy the second and third elements of the false-name exception. He cannot show that Montefiore *used* a name other than its own in the Letter; and he cannot show that the use of the name "Tele-Computer Systems" falsely indicated that a third party was collecting Montefiore's debts.

### 1. Montefiore did not "use" a name other than its own.

"A creditor uses a name other than its own when it uses a name that implies that a third party is involved in collecting its debts, pretends to be someone else or uses a

---

[9]     Summary judgment is particularly appropriate where, as here, the parties have waived their right to a jury trial. *See* JA1592; *see generally Schweizer*, 136 F.3d at 237 (agreeing with Federal Trade Commission agreed "deceptiveness is a factual determination for the jury or judge if jury trial is waived").

pseudonym or alias." *Maguire*, 147 F.3d at 236. To satisfy the "use" element, a plaintiff must do more than show that the creditor simply used another name in a communication with the debtor. "[A] creditor does not become liable under the false name exception solely because it uses something other than its legal name in its debt collection efforts." *Scalabrini v. PMAB, LLC*, 2020 WL 1049167, at *5 (S.D.N.Y. Mar. 3, 2020)(citing *Maguire*, 147 F.3d at 235); *see also Button v. GTE Serv. Corp.*, 1996 WL 943904, at *2 (W.D. Mich. 1999) ("[I]t is not the mere use of another name that would subject [a creditor] to the asserted statutory requirements, but the use of another name in such a way as to mislead [the] plaintiff concerning the identity of the party attempting to collect the debt.").

Instead, "[t]he 'use' element focuses on whether the creditor has *actively engaged in misrepresenting its identity* in some way." *Vincent*, 736 F.3d at 100. In *Vincent*, this Court analyzed § 1692a(6) and concluded that "by requiring the creditor to 'use' or 'employ for some purpose' a name other than its own, the text of the statute is clear that there must be some *active involvement in the misrepresentation by the creditor* before triggering liability under the false name exception." *Id.* at 99.

Active misrepresentation requires an attempt to "pretend to be someone else or to disguise [the creditor's] identity so as to deceive the debtor that a third person was

collecting or attempting to collect [the] debt." *Johnson v. Hamilton Point Prop. Mgmt.*, LLC, 2017 WL 8186857 at *7 (ND. Ga. Nov. 8, 2017). In *Vincent*, for example, this Court found the use element satisfied where a creditor retained a law firm "for the express purpose of sending breach letters that appeared to be attorney collection letters to its debtors." 736 F.3d at 99. The necessary "active involvement" by the creditor in *Vincent* was its "hir[ing] a third party for the purpose of sending letters that represent that the third party is collecting the debts." *Id.*

Rubin has shown nothing approaching that sort of active involvement or deception here. It is undisputed that Montefiore did not hire or retain any third party to collect its debt, but rather referred the debt to its own internal receivables department. JA723–24; JA160 ("According to our records, you are responsible for a past due balance of $94.39 and your account has been referred to our unit for follow up."). That department is known internally as Tele-Computer Systems, after the software system that was in place when the department was created. JA734; JA398–99; JA472. Because the template the receivables department uses for its collection letters was created using this software, the unit's collection letters continue to list "Tele-Computer Systems" in the address line. Using this name in the address line also helps ensure that mail is properly directed to the receivables unit, which uses the same P.O. Box as the billing

department, and it allows Montefiore to track payment and provide assistance to patients in need of assistance. JA398. In short, there is no indication that this name is used in order to deceive debtors about who is attempting to collect a debt.

As discussed above, courts have expressly rejected the argument that the mere presence of a different name in the header of a letter, without more, is sufficient to establish FDCPA liability. *See supra* at 17, 20. Here, the name Tele-Computer Systems appears only in the address line in two places in the Letter. *See* JA161–62. It does not appear in the body of the Letter. *Id.* By contrast, the name "Montefiore" appears seven times throughout the Letter, including in the payment section, which makes clear that any payment should be made to Montefiore. *Id.* It makes no sense for a creditor seeking to hide behind a false name to use that name only in the address line of a letter, while using its own name repeatedly throughout the body of the letter. *See South*, 2010 WL 5089862, at *14. As the District Court held, "it is clear from the body of the Letter that Montefiore [was] not using another name." JA1560.

### 2. The letter does not falsely indicate that a third party is attempting to collect the debt.

Even if the mere use of the name "Tele-Computer Systems" in the address line of the Letter could satisfy the "use" element, Rubin plainly fails to satisfy the third element of the false-name exception. The "key question" in this regard, is "whether,

22

under the least sophisticated consumer standard, a consumer would be *deceived* into believing that a debt collection effort was being made by an unrelated third party." *Scalabrini*, 2020 WL 1049167, at *3 (citing *Maguire*, 147 F.3d at 236).

Rubin bases his claim primarily on the first line of the return address, which includes the name "Tele-Computer Systems." But as the case law makes clear, that is not enough. *See supra* at 17, 20. The court must review "the letter in its entirety, not seek out isolated words or phrases that, absent context, might confuse." *Seplak*, 1999 WL 104730, at *3. To hold otherwise would "contradict the notion that the least sophisticated consumer is still rational and expected to read the entirety of a collection letter." *Nunez v. Mercantile Adjustment Bur., LLC*, 2020 WL 2475619, at *8 (S.D.N.Y. May 13, 2020); *see also Mahan v. Lab. Corp. of Amer.*, 2011 WL 836674, at *2 (S.D. Ala. 2011) ("A review of the notice leads to the conclusion that the only consumer who could be duped into thinking this notice was from a third person attempting to collect [Defendant]'s debts is a consumer who carelessly read the notice.").

Viewed as a whole, even the least sophisticated consumer would understand that the Letter Rubin received was an attempt by Montefiore to collect its own debt, not a third-party collection effort. The Letter specifically references "Montefiore" or "Montefiore Medical Center" seven times. JA160–61. In the first line, the Letter refers

to "our records," and indicates that Rubin's past-due account has been transferred to "our unit" for "follow up." JA160. Given the numerous surrounding references to "Montefiore," the only possible conclusion is that "our records" and "our unit" refer to Montefiore's records and Montefiore's collections unit.

The point is driven home in the portion of the Letter setting forth payment options. Just as in the billing statements Rubin had already received from Montefiore, the Letter indicated that "*we* offer the following payment methods:

- Online at MyChart at www.mychart.montefiore.org
- Over the phone by credit card at 1-347-577-4690. When prompted, please enter your Guarantor ID number.
- By mail — please send a check or money order payable to Montefiore Medical Center.

JA160. Each of these methods would lead Rubin and any other consumer to Montefiore, the creditor.

The MyChart website is Montefiore's patient portal, which contains a variety of patient information beyond billing and payment options. No patient could access the site and conclude that it belongs to a third-party debt collector. *See, e.g.*, *Mahan*, 2011 WL 836674, at *2 (observing that billing notice "gave the web address of www.labcorp.com/billing [the creditor] for payment via the internet"); *Marcotte v. Bank of Am.*, 2015 WL 2184369, at *3 (S.D. Tex. May 11, 2015) (least sophisticated

24

consumer would not be confused where statement repeatedly referred to creditor, Barclays, and directed debtor to make payment online at www.BarclaycardUS.com). Indeed, Rubin himself admitted that seeing the reference to Montefiore's MyChart webpage on his previous billing statements led him to believe the statements came from Montefiore. JA316–17.[10]

Similarly, the phone number, when dialed, is answered by a recording that says, "thank you for calling the Business Office of Montefiore." JA731. This Court has recognized that the manner in which a telephone call is answered is relevant in determining whether an unsophisticated consumer would believe it belonged to a creditor or third-party collector. *See Maguire*, 147 F.3d at 236 (finding that letter used false name where, among other things, "a consumer would not be aware that [the creditor] operates the phone lines because all phone calls are answered by personnel who identify themselves as employees of Debtor Assistance [the alleged false name]"). Rubin

---

[10]    Rubin argues that the reference to Montefiore's MyChart webpage should be ignored because "many customers, especially the elderly, are not well versed in the use of computers." Pl. Br. at 43. He cites no authority or record evidence to support this assertion. In any case, even without accessing the website, any consumer can clearly see that the address www.mychart.montefiore.org belongs to *Montefiore*, not a third party.

himself admits that, when he called the phone number listed on the Letter, he recognized that he was speaking with a representative of Montefiore. JA731.

Perhaps most saliently, the option to pay by mail clearly states that any check or money order should be payable *to Montefiore* and sent to the same address that appeared on Montefiore's earlier billing statements. The fact that the Letter instructs the consumer to remit payment directly to Montefiore is compelling, if not dispositive, evidence that it is Montefiore and not a third party that is attempting to collect the amount owed. *See, e.g.*, *Marcotte*, 2015 WL 2184369, at *3 (billing statement "could not give the least sophisticated consumer the false impression that a party unaffiliated with Barclays was collecting" its debt when it directed debtor to make payments online at www.BarclaycardUS.com); *Porter v. Wachovia Dealer Servs., Inc.*, 2007 WL 2694470, at *4 (D. Or. 2007) (false-name exception did not apply where statements "directed [debtor] to make his check payable to Wachovia," the creditor); *Colman v. North Shore Health Sys.*, 1998 WL 34077715 (E.D.N.Y. 1998) (hospital not subject to false-name exception where bill "refer[red] to the Hospital" and "nowhere indicate[d] that monies should be paid to any entity other than the Hospital"); *contra Northrup v. Amer. Express Co.*, 2010 WL 3894488, at *2 (N.D. Okla. 2010) (genuine issue of fact as to applicability of false-name exception where creditor's attorney "demanded a check

payable to him for the amount of the debt, indicating that he, and not [the creditor], was involved in collecting the debt at issue").

Finally, the back side of the Letter—initially omitted from Rubin's complaint, *see supra* at 12—removes any possible doubt that Montefiore is the sender. That portion of the Letter refers the recipient to "Montefiore's Financial Assistance program," again providing a number answered by "the business office at Montefiore." JA731. It strains credulity to suggest that a consumer reading this offer of financial assistance (let alone one who calls the listed number) would think that it came from a third-party debt collector and not Montefiore.[11]

The back side of the Letter also urges payment of the overdue balance to avoid "further collection activity," since "Montefiore Medical Center values you as a patient

---

[11]    For the first time on appeal, Rubin argues that the reference to Montefiore's Financial Assistance Program should be discounted because it is required by the Affordable Care Act. Pl.'s Br. at 42 (citing 26 C.F.R. § 1.501(r)-6(c)(4)). While it is true that nonprofit hospitals must assess a patient's financial capacity before engaging in "extraordinary collection actions," 26 C.F.R. § 1.501(r)-6, there is no such requirement for ordinary collection actions, *see* 77 Fed. Reg. 38158, 38155. It is also far from clear that a third-party debt collector must describe a creditor's financial assistance programs in its communications. But even if a debt collector can or must disclose a creditor's financial assistance programs, the least sophisticated consumer would hardly be so familiar with the intricacies of the Code of Federal Regulations that he would believe such a description came from a third party, and not the Hospital itself.

27

and appreciates you choosing Montefiore for your healthcare needs." JA161. It explicitly states that "[i]t would be preferred not to take additional action as *Montefiore Medical Center values you as a patient* and appreciates you choosing Montefiore for your healthcare needs." *Id.* The Letter concludes: "Thank you for choosing Montefiore Medical Center, *it is a privilege to care for you.*" *Id.* No consumer reading this language would believe that a third-party debt collector was expressing its appreciation for the privilege of caring for him.

The obvious conclusion that the Letter was sent by Montefiore is confirmed when it is viewed in the context of earlier mailings from Montefiore. *See, e.g.*, *Button*, 1996 WL 943904, at *2 (alleged deceitful mailing must be examined together with other correspondence). The Letter lists the same guarantor/account number, the same three payment methods, the same P.O. Box, and the same online patient portal as each of the prior billing statements. Any consumer looking at the Letter and the prior billing statements together would immediately know that they all came from Montefiore, the creditor. Indeed, when Rubin called the number listed on the Letter to complain, he had both the Letter and the August Billing Statement in front of him, and never claimed any confusion about who had sent them. JA732; JA163–64.

28

At bottom, there is no reason why Montefiore would assume a false name only to respectfully ask its patient-debtor for payment, refer him to its financial assistance program, thank him for choosing Montefiore, and assure him that "*it is a privilege to care for you*." JA161. These are not the words or sentiments of an abusive third-party debt collector. They are the words and sentiments of a hospital-creditor, exercising restraint in attempting to collect its own debt. As such, neither the false-name exception, nor the FDCPA, applies.

### C. Rubin's reading of the Letter and of relevant authority is unpersuasive.

Rubin strains to read both the Letter and relevant authority in a wooden, hyper-literal manner that would make good-faith creditors liable for substantial statutory damages and attorney's fees based on insignificant variations in their communications with consumers. This Court should not similarly lose sight of the forest for the trees.

#### 1. Rubin's arguments about the form and style of the Letter are unavailing.

Rather than look at the Letter "as a whole" and in the light of its surrounding context, Rubin attempts to manufacture a violation by focusing on words in isolation and harping on irrelevant differences between the style of the Letter and Montefiore's earlier communications. *See* Pl.'s Br. at 24–26. As the District Court observed, Rubin improperly "focuses on what is different between the . . . communications and pays no

29

mind to what is the same." JA1558. This sort of willful misreading does not support liability under the false-name exception. *See, e.g. Mahan*, 2011 WL 836674, at *2 (false-name exception inapplicable where "the only consumer who could be duped into thinking this notice was from a third person attempting to collect [the creditor's] debts is a consumer who carelessly read the notice").

**a.** Rubin focuses particular attention on the fact that the Letter, which was sent by Montefiore's receivables unit, has a different appearance from the earlier statements sent by the billing department. *See* Pl.'s Br. at 4, 11–12, 20, 30, 46, 50–51. But he cites no authority suggesting these types of stylistic variations are enough to implicate the false-name exception. There is no requirement that every communication sent by a creditor must use an identical font or color scheme. What matters is whether the least sophisticated consumer, viewing the communication in its entirety, would understand that it came from the creditor and not a third party. *See, e.g., Athens*, 765 F. Supp. at 169 n. 7 (when deciding FDCPA claim, "the Court will consider the language in all the letters together, and not just the language containing a particular notice.").

Rubin was able to obtain discovery about Montefiore's internal style guide not because it was relevant to the false-name analysis, but because it was relevant to

30

Montefiore's *bona fide* error defense, which is not at issue on appeal. *See* JA1377.[12]  It should go without saying that an unsophisticated debtor would not have access to his creditor's style guide for the purpose of comparing and contrasting various communications. Far more relevant than the colors and fonts is the actual *content* of the Letter, which matches Montefiore's previous communications in all salient respects. For the reasons stated above, no consumer could look at the content of the Letter, even accounting for its different appearance, and conclude that it was sent by a third-party debt collector, as opposed to Montefiore. *See supra* at 23-29.

**b.** Rubin also quibbles with minor deviations in the address line of the Letter. *See* Pl.'s Br. at 24–25. As discussed above, the name "Tele-Computer Systems" appears in the address line of the Letter because that is the name of the software program that was in use when the template for the Letter was created, and it remains the name colloquially used within Montefiore to refer to the receivables unit. *See supra* at 8. But the repeated reference to "Montefiore" and "Montefiore Medical Center" within the body of the

---

[12]    The magistrate judge, in granting this discovery, noted that the "trademark-law standards cited by Plaintiff are [not] applicable to FDCPA cases," but that the style guide may be relevant to Montefiore's affirmative defense of *bona fide* error. JA1377. While the District Court permitted supplemental briefing on the style guide, it noted that "whether the information is relevant . . . is a decision this Court can make when adjudicating Defendant's motion." JA1597 (Docket 66).

Letter (including identifying who the payment should be made out to) erases any confusion. Moreover, the address provided is in all practical respects *the same* as that provided in the earlier mailings. As Rubin points out, the address in the Letter does not contain the words "Church Street Station," but it has an identical P.O. Box and zip code, which is the only relevant information.[13]

**c.** Next, Rubin argues that the Letter suggests "someone new [is] now seeking to collect the debt on behalf of Montefiore," because it states "your account has been referred to our unit for follow-up." Pl.'s Br. at 26. But there's nothing wrong with a creditor referring a debt to an internal collection unit. *See Maguire*, 147 F.3d at 235 ("An in-house collection unit will be exempt from the provisions of the FDCPA if it collects its own debts in the true name of the creditor or a name under which it has consistently done business."). Here, the fact that the Letter indicates that Rubin's past-due balance "has been referred to *our unit* for *follow-up*" suggests that a unit within Montefiore is following up on the account after it was referred by the billing department

---

[13]     Rubin also argues that the Letter specifically directs the recipient to "please send a check or money order *payable to Montefiore Medical Center*," while previous mailings simply direct patients to "mail[] your payment with the top portion of your bill in the enclosed envelope." Pl.'s Br. at 26. It is difficult to see how the Letter's express reference to Montefiore as the recipient of payment would suggest to an unsophisticated consumer that a third party is collecting the debt.

32

that sent the earlier statements. The debt is still being collected "in the true name of the creditor," Montefiore. *See id.* This understanding is confirmed by the Letter's reference to "our records" and the fact that it lists Rubin's "overall account balance," including portions not being collected by the receivables unit. JA160.

**d.** The next trifling distinction on Rubin's list is that the phone number on the Letter is different than the number on the earlier statements. Pl.'s Br. at 25. Again, this is not surprising, since the Letter was sent by a different unit at Montefiore. Far more important is the fact that both numbers are answered by a recording thanking the caller for calling "Montefiore." JA731. There is simply no way that a consumer hearing that recording would think he has reached a third-party debt collector and not Montefiore. *Cf. Maguire*, 147 F.3d at 236 (finding it relevant for false-name analysis that phone number listed on collection letter was "answered by personnel who identify themselves as employees of Debtor Assistance," as opposed to the creditor).

**e.** Finally, Rubin argues that the Letter "refers to Montefiore in the third person," whereas a creditor collecting its own debt would refer to itself in the first person. Pl.'s Br. at 25–26. This ignores the fact that the earlier billing statements, which Rubin acknowledges undoubtedly came from the creditor, *also* refer to Montefiore in the third person. *See, e.g.*, JA143 ("Thank You for Choosing Montefiore Medical Center");

JA144 ("Thank you for choosing Montefiore for your health care services."). It is perfectly natural for an in-house collections unit to refer to the creditor by its formal name, rather than a first-person pronoun, and Rubin cites no authority suggesting otherwise. And any potential confusion is vitiated by the fact that the Letter repeatedly expresses the *sentiments* of Montefiore. JA161 ("Montefiore Medical Center values you as a patient and appreciates you choosing Montefiore."); *id.* ("Thank you for choosing Montefiore Medical Center; it is a privilege to care for you.").

### 2. The cases Rubin relies on are readily distinguishable.

In his appellate Brief, Rubin relies on the same five cases that he cited in the District Court: *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232 (2d Cir. 1998); *Catencamp v. Cendant Timeshare Resort Group—Consumer Finance, Inc.*, 471 F.3d 780 (7th Cir. 2006); *Ekinici v. GNOC Corporation,* No. 02-3928, 2002 WL 31956011 (E.D.N.Y Dec. 31, 2002); *Nitzkin v. Craig*, 324 Mich. App. 675 (2018); and *Carlson v. Long Island Jewish Medical Center*, 378 F. Supp. 2d 128 (E.D.N.Y. 2005). But as the District Court found below, none of them warrants a finding that the false-name exception applies on the particular facts of this case.

**a.** In *Maguire*, a delinquent accountholder, after receiving several standard statements from its creditor, Citicorp, received a pre-collection letter from "DEBTOR

ASSISTANCE." 147 F.3d at 235. The letter did not include the name Citicorp at all, but instead referred cryptically to the "Debtor Assistance Unit of CRS." *Id.* It also listed a phone number that, when dialed, was answered by personnel identifying themselves as employees of Debtor Assistance, not Citicorp. *Id.* at 236. Weighing all the evidence, the Court concluded that there was a genuine dispute of fact as to whether the least sophisticated debtor would believe the letter came from a third-party collector. *Id.* at 237–38.[14]

The Letter here has little in common with the notice in *Maguire*. Whereas the *Maguire* notice did not once mention Citicorp, the creditor, *id.* at 234, the Letter here prominently refers to Montefiore seven times. Whereas the *Maguire* notice included a return address that the debtor would not have seen before, *id.* at 236, the return address in the Letter included the exact same P.O. Box and zip code as contained in previous communications from Montefiore. Whereas the *Maguire* notice provided a phone number that was answered by employees using the alleged false name, the phone

---

[14]    Notably, the Court in *Maguire* stressed that "a fact finder might find for the defendant," and that the case should go to trial. *Id.* at 237–38. Here, the parties waived the right to a jury trial, meaning the "fact finder" was the District Court, which has already concluded that the least sophisticated consumer would not have been misled by the Letter.

number provided in the Letter is answered by a recording indicating the caller has reached Montefiore. The *Maguire* notice did not provide payment options that obviously directed payment to the creditor, *id.* at 234, whereas the Letter directed Rubin to pay through Montefiore's MyChart website, by phone at a number answered by Montefiore, or by mail at Montefiore's address with a check made "payable to Montefiore Medical Center." JA160.

**b.** The Seventh Circuit's decision in *Catencamp* is similarly distinguishable. There, the creditor, Cendant Timeshare Resort Group–Consumer Finance, Inc., sent a deficiency letter using the name Resort Financial Services, with small type beneath indicating that it was "A Division of CTRG—Consumer Finance." 471 F.3d at 781. The letter explicitly stated that "Fairfield Communities, Inc. [the original creditor] has *referred your account to us for collection*," and indicated that if the debtor disputed the amount due "the validity of this debt will be verified in writing *with the creditor*." *Id.* The court held that "when a letter *proclaims*, as this one did, that it is coming from someone other than the creditor—the letter identified Fairfield Communities as the creditor and promised to obtain verification from Fairfield on demand—a debtor naturally supposes himself to be in contact with a debt collector" *Id.* (emphasis in original).

Plainly, there is nothing in Montefiore's Letter that "proclaims" that it is coming from someone other than Montefiore. It states that it is coming from a "unit" that is "follow[ing]-up" on a past-due balance and it never once refers to a "creditor." In stark contrast to *Catencamp*, the Letter states that "if the balance reflected does not match your expected payment responsibility for your services, please contact *our customer service representatives*" at a number that is answered by Montefiore. JA161.

**c.** Rubin's reliance on *Ekinici* and *Nitzkin* is similarly misplaced. Both cases involved creditors who referred debts to in-house lawyers who misrepresented themselves as third-party collectors. In *Ekinici*, the attorney used her own letterhead and referred to herself as "counsel to the Atlantic City Hilton." 2002 WL 31956011, at *3. She further represented that the debt had been "forwarded to my office." *Id*. Likewise, in *Nitzkin*, a creditor's in-house lawyer pretended to be outside counsel collecting a debt. 324 Mich. App. 675, 684-85. The letter purported to be from "the Law Offices of Robert M. Craig & Associates," stated that the creditor was a "client" of that office, and that the debt had been "turned over" to the law office. *Id.*

Having inside counsel impersonate outside lawyers collecting a debt is one of the key practices that the false-name exception is meant to counter. *Vincent*, 736 F.3d at 99. It is easy to see how a letter from a law office purporting to represent the creditor

37

would be intimidating to a debtor and suggest that an adversarial collections process is underway. The situation here is quite obviously different. Montefiore's Letter does not purport to be sent by an outside law office, but rather "our unit" within Montefiore. And, far from being adversarial, the Letter repeatedly thanks Rubin for being a patient of Montefiore and invites him to take advantage of Montefiore's Financial Assistance program. In short, *Ekinici* and *Nitzkin* well illustrate when the false-name exception is needed—to prevent creditors from harassing their customers without losing good will—while this case illustrates when it is not—when a creditor repeatedly refers to itself by name and thanks its customer for his business while offering various payment options to satisfy a past-due account balance.

**d.** Finally, Rubin's reliance on *Carlson* is misplaced because that case was decided on a motion to dismiss. The plaintiffs in *Carlson* alleged that a group of hospitals referred debts to an entity called "Regional Claims Recovery Service (RCRS)," which was an "unincorporated subdivision" of the hospitals that used "abusive, harassing tactics in collecting outstanding bills." 378 F. Supp. 2d at 130. The hospitals moved to dismiss on the ground that they were not a debt collector, but the trial court denied the motion, finding that "the liability of the Hospitals on this [false-name] theory turns on

facts that cannot be determined on a motion to dismiss." *Id.* at 132.[15] Here, by contrast, the District Court granted summary judgment after extensive discovery and after concluding that there were no genuine disputed issues of fact.

## CONCLUSION

Mr. Rubin has attempted to make a federal (class-action) case out of a letter that politely asked him to pay a $94.39 overdue balance. Everything about the Letter indicates that it is an effort by Montefiore to collect its own debt and nothing about it is abusive. To find Montefiore liable in this context would be to completely subvert the FDCPA's purpose of "eliminat[ing] *abusive* debt collection practices *by debt* collectors," while "insur[ing] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(d). And it would reward the type of "gotcha" litigation behavior that so many courts have lamented. *See supra* at 1–3. Instead, because Montefiore is not a debt collector and did not use a false name to deceive its patients, the Court should affirm the judgment in its favor.

---

[15]    Notably, the case was decided before the Supreme Court clarified federal pleading requirements in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Carlson*, 378 F. Supp. 2d at 132 (applying abrogated pleading standard of *Conley v. Gibson*, 355 U.S. 41 (1957)).

Respectfully submitted,

*/s/ Tadhg Dooley*
Tadhg Dooley
John M. Doroghazi
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06510
(203) 498-4400
tdooley@wiggin.com
jdoroghazi@wiggin.com

*Attorneys for Defendant-Appellee*
*Montefiore Medical Center*

Dated: February 18, 2021

## CERTIFICATE OF COMPLIANCE

**Federal Rules of Appellate Procedure Form 6.**
**Certificate of Compliance With Rule 32(a)**

**Certificate of Compliance With Type-Volume Limitation,**
**Typeface Requirements and Type Style Requirements**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒          This brief contains 9,286 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), **or**

☐          This brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because:

☒          This brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14 point Adobe Garamond Pro type style, **or**

☐          This brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: February 18, 2021

By: */s/ Tadhg Dooley*
Tadhg Dooley