# 20-2721cv

In The

## United States Court of Appeals
## For the Second Circuit

––––––––––––––––––

**JONATHAN RUBIN,**
individually and on behalf of a class,
Plaintiff-Appellant,

**-v.-**

**MONTEFIORE MEDICAL CENTER,**
Defendants-Appellees.

––––––––––––––––––

On Appeal from the United States District Court for the
Southern District of New York, No. 1:18cv11066-AT
(Hon. Analisa Torres, U.S.D.J.)

––––––––––––––––––

### PLAINTIFF-APPELLANT'S REPLY BRIEF

––––––––––––––––––

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 South Clark  Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ i

TABLE OF AUTHORITIES ........................................................ ii

SUMMARY OF ARGUMENT ......................................................1

ARGUMENT ..............................................................................3

    I.    THE USE OF A FAUX COLLECTION AGENCY TO COLLECT HOSPITAL BILLS IS CONDUCT SPECIFICALLY OUTLAWED BY CONGRESS THAT CAUSES REAL HARM ..3

    II.    MONTEFIORE USED A FALSE NAME TO COLLECT DEBTS ...........................................................................6

    III.    THE REFERENCES TO MONTEFIORE IN THE LETTERS AT ISSUE DO NOT DETRACT FROM ITS DECEPTIVE NATURE ........................................................................10

    IV.    MONTEFIORE'S OTHER CONTENTIONS LACK MERIT ....18

        A.    The "False Name" Violation Does Not Require the Involvement of a Third Party ................................18

        B.    This Case Does Not Involve the Consistent Use of a Trade Name for Both Performing Services and Collecting for Those Services ......................................................18

        C.    Plaintiff Need Not Prove Intent to Deceive, Although Montefiore's Witness Admitted Intent ................21

        D.    Other Cases Cited by Montefiore Do Not Help it ...............22

    V.    CONCLUSION ...............................................................26

# TABLE OF AUTHORITIES

*Anthes v. Transworld Systems, Inc.*,
   765 F.Supp. 162. 169 n. (D.Del. 1991) .............................................................. 14

*Barnes v. Advanced Call Ctr. Techs., LLC*,
   493 F.3d 838 (7th Cir. 2007) .............................................................................. 10

*Button v. GTE Serv. Corp.*1:96cv383,
   1996 U.S. Dist. LEXIS 16971, at *1-2, 1996 WL 943904, at *2 (W.D. Mich.
   Oct. 15, 1996) ...................................................................................................... 20

*Catherman v. Credit Bureau of Greater Harrisburg*,
   634 F.Supp. 693,695 (E.D.Pa. 1986) ................................................................. 14

*Colman v. North Shore Health Sys*., 97cv1871,
    1998 U.S. Dist. LEXIS 23428, *17, 1998 WL 34077715 (E.D.N.Y. June 19,
1998) ...................................................................................................................... 23

*Deleon v. Action Collection Agency of Boston,* 17cv8899,
   2018 U.S. Dist. LEXIS 75742, at *8, 2018 WL 2089343 (S.D.N.Y. May 3,
   2018) ...................................................................................................................... 10

*Encyclopaedia Britannica, Inc. v. FTC*,
   605 F.2d 964,971 (7th Cir. 1979) ...................................................................... 26

*FTC v. Standard Education Society*,
   302 U.S. 112,116 (1937) ..................................................................................... 17

*Kwasniewski v. Medicredit, Inc.,*19cv701,
   2020 U.S. Dist. LEXIS 239147, at *2, 2020 WL 7495578 (W.D. Wis. Dec. 21,
   2020) ...................................................................................................................... 11

*Marcotte v. Bank of America,* 14cv2773*,*
   2015 U.S. Dist LEXIS 60976, 2015 WL 2184369 (S.D. Tex. May 11, 2015)  22

*Maguire v. Citicorp Retail Servs.*,
   147 F.3d 232 (2d Cir. 1998) ........................................................................ 9, 16

*Mahan v. Laboratory Corp. of America* 10cv00426,
   2011 U.S. Dist. LEXIS 24324, at *4, 2011 WL 836674
   (S.D. Ala. Mar. 4, 2011) ...................................................................................... 24

ii

*Porter v. Law Office of Charles G. McCarthy, Jr. & Assocs.,* 09cv1370,
  2011 U.S. Dist. LEXIS 84850, at *4, 2011 WL 3320331
  (C.D. Ill. Aug. 2, 2011) ............................................................... 11

*Porter v. Wachovia Dealer Services, Inc*., 07cv592,
   2007 U.S. Dist. LEXIS 69151, at *10, 2007 WL 2694470 (D. Or. Sep. 12,
   2007) ........................................................................................... 23

*Profitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy
P.C.,*
  314 F.3d 62 70-71 (2d Cir. 2002) ...................................... 15

*Scalabrini v. PMAB, LLC,* 18cv11152,
  2020 U.S. Dist. LEXIS 37472 at *11-12 (S.D.N.Y. Mar. 3, 2020) ............. 19,20

*Schuerkamp v. Afni, Inc.,* 10cv6282,
  2011 U.S. Dist. LEXIS 133025 at *5, 2011 WL 5825969
  (D. Or. Nov. 16, 2011) ................................................................ 10

*Vangorden v. Second Round, LP*,
  897 F.3d 433, 436-37 (2d Cir. 2018) .............................................. 21

*Vincent v. Money Store,*
  736 F.3d 88, 100 (2d Cir. 2013) ...................................... 18

*Weissman v. Collecto, Inc.,* 17cv4402,
  2019 U.S. Dist. LEXIS 8600, at *2-3 (E.D.N.Y. Jan. 17, 2019) .................... 10

## Rules and Regulations

15 U.S.C. §1692a ...................................................................... 3, 17, 18

15 U.S.C. §1692e ................................................................ 3, 7, 17, 21, 26

15 U.S.C. §1692e(10) .................................................................... 17

15 U.S.C. §1692g ...................................................................... 13,17

15 U.S.C. §1692j ............................................................................ 4

Federal Trade Commission Staff Commentary on the FDCPA,
  53 Fed. Reg. 50097, 50102 (December 13, 1988) .......................... 16

NY CLS Pub Health 26 C.F.R. § 1.501 ...................................... 11

NY CLS Pub Health § 2807-k .................................................. 11

## SUMMARY OF ARGUMENT

Defendant Montefiore Medical Center has submitted an elaborate brief that seeks to defend conduct by its in-house collection department, using a "Tele-Computer Systems" letterhead, which is basically indefensible.

Montefiore goes to elaborate lengths ("Design Guide and Brand Center," App. 1489-1546) to create a brand identity so that anyone seeing a communication from it instantly recognizes it is from Montefiore. However, when it collects debts, it eschews use of its brand identity, instead using a fake letterhead which purports to come from a third-party collection agency called "Tele-Computer Systems." Montefiore admittedly does this because the fake letterhead is more effective at collecting debts than letters sent in its own name. Upon being sued for violating the Fair Debt Collection Practices Act ("FDCPA"), Montefiore argues that the letter contains subtle clues, from which the least sophisticated consumer (hospital patients, often sick or elderly as well) should have discerned that the letter was from the hospital itself, even though it intentionally did not use its distinctive "Montefiore" letterhead or any element of its brand identity.

The asserted clues are at best ambiguous and obscure, and do not overcome the clear meaning conveyed by the "Tele-Computer Systems" letterhead and absence of Montefiore's brand identity. More importantly, Defendant's entire

argument is illegitimate, hoping to gain traction from the fact that the Court must necessarily spend hours studying the asserted clues, giving them far greater attention and thought than any consumer reading the letter ever would.

An honest business sends correspondence on its own letterhead and using its established brand identity. There is no morally proper reason for doing otherwise, and Montefiore makes no attempt to suggest any. The only reason for the "Tele-Computer Systems" letters is to convey the false impression that the matter has been escalated and is now in the hands of a collection agency. The FDCPA specifically prohibits that debt collection strategy.

# ARGUMENT

## I. THE USE OF A FAUX COLLECTION AGENCY TO COLLECT HOSPITAL BILLS IS CONDUCT SPECIFICALLY OUTLAWED BY CONGRESS THAT CAUSES REAL HARM

The use by creditors of purported third party names to trick consumers – here a population of sick and elderly hospital patients and their loved ones – into believing that their debts are in the hands of third party debt collectors, when they are not, is precisely one of the abuses that Congress was specifically concerned about in enacting the FDCPA. Congress was sufficiently concerned about this practice to craft a specific addition to the definition of "debt collector" to bring creditors who engage in it within the FDCPA – "the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." (15 U.S.C. §1692a) Congress also enacted a related provision, 15 U.S.C. §1692e(14), which makes it unlawful for any entity covered by the definition of "debt collector" to "use . . . any business, company, or organization name other than the true name of the debt collector's business, company, or organization." Finally, Congress made it unlawful for third parties to facilitate this abuse: "It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor

of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." 15 U.S.C. §1692j(a).

This case does not involve an attempt to stretch general proscriptions of deception to cover marginal conduct, as Montefiore attempts to suggest (Def.Br., pp. 1-5). It involves conduct which Congress went to great lengths to specifically outlaw.

The problem is particularly serious when dealing with hospital bills. Hospital bills differ from most consumer debts. The consumer usually does not contract to pay a specific amount for specific goods or services. Rather, the consumer has some injury or symptom requiring treatment. The consumer often has no idea whether the resulting bill is reasonable compensation for medically necessary services.

As a result of the manner in which hospital bills are prepared, as many as 80% contain errors, almost always in favor of the hospital. E.g., "Up to 80% of Hospital Bills Have Errors. Are You Being Overcharged?" (May 21, 2019);[1] Healthcare Innovation, "Medical Billing Errors are Alarmingly Common—and

---

[1] https://www.healthline.com/health-news/80-percent-hospital-bills-have-errors-are-youbeing-overcharged

-4-

Patients Are Paying the Price" (May 15, 2019);[2] "5 Tricks Hospitals Use to Overcharge (and What You Can Do About It)."[3]

The combination of a lack of a negotiated price and a high error rate means that misrepresentations that bills are now in the hands of a collection agency instead of the hospital create a substantial risk that hospital patients – a vulnerable population to begin with – will be intimidated into paying money they may not owe.

The present lawsuit had its genesis in Mr. Rubin's dissatisfaction with his bill from Defendant. (Def.Br., p. 6 and n. 3) Contrary to Montefiore's assertion, attempting to deter a hospital patient from questioning a bill by misrepresenting that the matter had been escalated to a collection agency when that is not the case is not a "fantasy harm" (Def.Br., p. 2). Errors that increase the cost of medical services are a very real harm, and the use of a faux "collection agency" to attempt to intimidate hospital patients into paying inflicts real-world damage.

---

[2] https://www.hcinnovationgroup.com/finance-revenue-cycle/article/ 21080693/medical-billing-errors-are-alarmingly-commonand-patients-are-paying-t he-price#:~:text=Medical%20Billing%20Errors%20are%20Alarmingly%20Comm on%E2%80%94and%20Patients%20Are%20Paying%20the%20Price,-Payors%2C %20patients%2C%20and&text=Whether%20they%20are%20the%20result,from% 20insurance%20companies%20and%20employers.

[3] https://claimmedic.com/blog/5-tricks-hospitals-use-to-overcharge/

Montefiore's representative admitted that the Tele-Computer Systems letters were created for the purpose and had the effect proscribed by the FDCPA. It was less expensive for Montefiore to send Tele-Computer Systems letters than to send the debts to an outside collection agency which would charge "a very high percentage to collect the account". (App. 884; McNiff Dep. Tr. p. 42, lines 24-25; p. 43, lines 1-7) Furthermore, the Tele-Computer Systems letters had the impact of "real" collection letters  –  following the creation of the Tele-Computer System scheme, the number of accounts Montefiore sent to real third party collection agencies decreased. (App. 888; McNiff Dep. Tr. p. 46, lines 9-25; p. 47, lines 1-9)

## II.   MONTEFIORE USED A FALSE NAME TO COLLECT DEBTS

Montefiore absurdly claims that it isn't using a false name because "Tele-Computer Systems" is the name of the software program used by its internal collection department (Def.Br., p. 3), as if it were normal practice to identify the computer system used to produce a letter at the top of page one, where one would expect to find the sender's letterhead. When "Tele-Computer Systems" is placed at the top of a collection letter  –  where the letterhead identifying the source of the letter is normally placed  –  Montefiore is "us[ing] any name other than [its] own which would indicate that a third person is collecting or attempting to collect such debts."

-6-

The representation that a third person called "Tele-Computer Systems" is collecting the debt is particularly dramatic because Montefiore has an elaborate brand identity program, pursuant to which all communications coming from Montefiore  – including all bills previously sent to a patient prior to those using the "Tele-Computer Systems" ruse  –  use "Montefiore" with specific and very distinctive colors and format.  Businesses adopt trade names, trademarks, trade dress and branding to make clear to the consumer the source of any communication or product containing those trade names, trademarks, trade dress and branding.  Conversely, any communication or product that does ***not*** contain those trade names, trademarks, trade dress and branding is understood to come from a different source.

The combination of the "Tele-Computer Systems" letterhead and the absence of the distinctive Montefiore branding tells the consumer that the "Tele-Computer Systems" letters come from someone other than Montefiore.  The clear visual and textual message of the communication is that  a third party debt collector has become involved.   And  "Tele-Computer Systems" is most certainly not the "the true name of [Montefiore's] business, company, or organization."  (15 U.S.C. §1692e(14))

Montefiore argues (Def.Br., p. 30), that "There is no requirement that every

communication sent by a creditor must use an identical font or color scheme." Actually, Montefiore's style manual ("Design Guide and Brand Center") requires just that (App. 1495-99). Montefiore's distinctive branding is required on all communications from Montefiore and the approved formats may not be departed from (App. 1500). There are variations for particular departments, activities and forms of communication (e.g., forms that don't permit the use of color), but anyone who sees a communication which complies with the style manual will immediately recognize its source as Montefiore. Conversely, if a person is exposed to the distinctive branding and then sees a communication, such as the "Tele-Computer Systems" letters, which plainly does ***not*** comply, the message conveyed is that it is not from Montefiore.

The fact that there really is or was a computer system called "Tele-Computer Systems" does not detract from the impact of the letterhead at issue. The "least sophisticated consumer" has no idea of the origin of the name, and the fact that it is a real computer product does not detract from the effect of its use as a trade name distinct from "Montefiore." Defendant's argument is akin to claiming that the use of a gecko to denote an insurance company is not a valid trademark because geckos exist in nature. That is a *non sequitur* – a cute reptile selling insurance denotes GEICO, Montefiore's distinctive branding denotes Montefiore,

and the "Tele-Computer Systems" letterhead without that branding denotes a collection agency that is not Montefiore.

Montefiore argues that the Magistrate Judge ordered production of its style manual as relevant to the bona fide error defense rather than the visual effect of Montefiore's communications. (Def.Br., pp. 30-31) However, the briefing and decision on the motion to compel took place without having the style manual, which Montefiore was refusing to produce. Once it was produced the manual made clear that (1) Montefiore has an elaborate brand identity scheme, (2) all communications from any part of Montefiore are supposed to conform to the manual, (3) Montefiore wants consumers who see communications that conform to that brand identity scheme to immediately recognize that the communications are from Montefiore, and (4) the purpose and effect of sending communications that do not conform to that brand identity scheme is to convey the message that they do not come from Montefiore.

The combination of the faux letterhead, the deliberate omission of the signature Montefiore branding, and Montefiore's admissions regarding the purpose and effect of the "Tele-Computer Systems" letters makes this a stronger case for the consumer than *Maguire v. Citicorp Retail Servs.,* 147 F.3d 232 (2d Cir. 1998), where this Court held that a triable issue of fact was presented. The

decision of the District Court in this case, that as a matter of law the least sophisticated consumer would understand that the "Tele-Computer Systems" letter really came from Montefiore, cannot stand.

## III.  THE REFERENCES TO MONTEFIORE IN THE LETTERS AT ISSUE DO NOT DETRACT FROM ITS DECEPTIVE NATURE

Montefiore seeks to negate the clear visual impact of the "Tele-Computer Systems" letters by pointing to references in its letters to Montefiore.  However, the references do not negate the visual impact of the letters:

1.  Montefiore points out that the Tele-Computer Systems letters direct that a check be made payable to Montefiore or that it be paid via its online portal or telephone number. (Def.Br., pp. 24-26)  The problem with this argument is that many collection letters from *real* collection agencies direct that checks be made payable to the creditor or that payment be made to the creditor.  *E.g., Barnes v. Advanced Call Ctr. Techs., LLC,* 493 F.3d 838, 839 (7th Cir. 2007); *Deleon v. Action Collection Agency of Boston,* 17cv8899, 2018 U.S. Dist. LEXIS 75742, at *8, 2018 WL 2089343 (S.D.N.Y. May 3, 2018); *Weissman v. Collecto, Inc.*, 17cv4402, 2019 U.S. Dist. LEXIS 8600, at *2-3 (E.D.N.Y. Jan. 17, 2019); *Schuerkamp v. Afni, Inc.,* 10cv6282, 2011 U.S. Dist. LEXIS 133025, at *5, 2011 WL 5825969 (D. Or. Nov. 16, 2011); *Porter v. Law Office of Charles G.*

*McCarthy, Jr. & Assocs.,* 09cv1370, 2011 U.S. Dist. LEXIS 84850, at *4, 2011 WL 3320331 (C.D. Ill. Aug. 2, 2011).   Presumably large creditors insist on this as protection against dishonest or insolvent debt collectors.  Defendant is pointing to a common practice by ***real*** collection agencies as evidence of something that should alert consumers to the fact that Tele-Computer Systems is ***not*** a real collection agency but a name used by Montefiore.

      2.      Montefiore points to the fact that the letter advises of the availability of financial assistance (charity care) from Montefiore.  (Def.Br., pp. 9-10, 27 and n.11)  Such notices are provided for by federal[4] and state law.[5]  Federal law allows the notice to be provided on behalf of the hospital; state law requires "that any collection agency under contract with a general hospital for the collection of debts follow the hospital's financial assistance policy, including providing information to patients on how to apply for financial assistance where appropriate."[6]  Real collection agencies often give the notices.  *E.g., Kwasniewski v. Medicredit, Inc.,* 19cv701, 2020 U.S. Dist. LEXIS 239147, at *2,  2020 WL

---

    [4]  The Affordable Care Act and implementing regulations, 26 C.F.R. § 1.501(r)-6(c)(4).

    [5]  NY CLS Pub Health § 2807-k.

    [6]   NY CLS Pub Health § 2807-k, subd. (h).

-11-

7495578 (W.D. Wis. Dec. 21, 2020). If the notice is accurate, this protects them against being sued for engaging in collection activities without the notice having been first provided. Again, Montefiore is pointing to a common practice by **_real_** collection agencies as something that should alert consumers to the fact that Tele-Computer Systems is **_not_** a real collection agency but a name used by Montefiore. Montefiore also argues that consumers are unlikely to be familiar with the statutes and regulations requiring the notice; however, anyone who has received a hospital bill or a collection letter concerning a hospital bill will have received the notice and may realize that it is a legally-prescribed notice.

   3. Montefiore points to the fact that the Tele-Computer Systems letter begins by stating that, "[a]ccording to our records, you are responsible for a past due balance of $94.39 and your account has been referred to our unit for follow up." (Def.Br., p. 9) Montefiore claims that a consumer would read "our records" as meaning "Montefiore's records" and "our unit" as meaning "Montefiore's internal collection department." But why? A consumer would naturally read a reference to "our records" in a letter with the letterhead of "Tele-Computer Systems" and none of Montefiore's signature branding as meaning the records which Tele-Computer Systems has been provided by Montefiore regarding the consumer's debts and "our unit" as referring to Tele-Computer Systems.

4.      Montefiore points to the fact that the Tele-Computer Systems letter states that "[t]hese balances are related to services provided by Montefiore Medical Center and its providers." (Def.Br., p. 9) This does not tell the consumer that the letter is coming from Montefiore rather than an outside collection agency called "Tele-Computer Systems."   Collection letters from outside collection agencies always identify the creditor and debt, and usually include the creditor's account number (here, "guarantor ID").   No consumer is going to pay without knowing what the debt is, and the FDCPA mandates disclosure of the name of the creditor and the amount of the debt.  15 U.S.C. §1692g(a).  Again, Montefiore claims that information invariably found on collection letters from ***real*** third party debt collectors should alert the consumer to the fact that this letter is ***not*** from a real third party debt collector.

5.      Montefiore points to the statement in the Tele-Computer Systems letter that "It would be preferred not to take additional action as Montefiore Medical Center values you as a patient and appreciates you choosing Montefiore for your healthcare needs."  (Def.Br., p. 10) Montefiore is referred to in the third person; the letter doesn't say "we value you as a patient."  This polite or conciliatory statement does not suggest that the Tele-Computer Systems letter is from Montefiore, only that Montefiore wants its outside debt collector to be polite.

-13-

6.    Montefiore points to the statement, "Thank you for choosing Montefiore Medical Center; it is a privilege to care for you." (Def.Br., pp. 10-11) Again, this indicates that Montefiore wants its debt collector to be polite and conciliatory and may have provided a stock phrase to that end; it is not a clear disclosure that the letter is from Montefiore and not a third party collection agency called Tele-Computer Systems.

7.    Montefiore points out that the post office box on the Tele-Computer Systems letters is the same as that on the Montefiore bills. (Def.Br., p. 4) This "clue" assumes (i) that the patient reading the Tele-Computer Systems letter will either retain the prior correspondence or recall the address on it, and (ii) that the item will be noticed by the patient at all. What consumer pays attention to the myriad of post office boxes to which they send bill payments?  A federal judge who places the documents side by side and studies them intensely might notice this, but a hospital patient would not. That Montefiore would argue about such a Holmesian "clue" rather than use its distinctive letterhead and not that of "Tele-Computer Systems" illustrates what it is attempting to do, and what is fundamentally wrong with its position.[7]

---

[7]  Montefiore cites two older cases, *Anthes v. Transworld Systems, Inc.,* 765 F.Supp. 162. 169 n. 7 (D.Del. 1991); and *Catherman v. Credit Bureau of Greater Harrisburg*, 634 F.Supp. 693, 695 (E.D.Pa. 1986), for the proposition (Def.Br., p.

-14-

In short, the Tele-Computer Systems letters unambiguously identify the sender as Tele-Computer Systems in the place where the sender is identified in American business correspondence – the letterhead. In addition, they deliberately omit the signature branding that is found on all other communications from Montefiore. The distinctive branding is intended to convey the message that the communication is from Montefiore, and its omission conveys the message that the source of the communication is ***not*** Montefiore. None of the statements that Montefiore points to as "disclosing" the true origin of the letters actually does anything of the sort. They are at best ambiguous or obscure, particularly when read in the manner a patient typically reads a collection letter.

Montefiore's deception is accomplished largely through the misuse of trademarks – Montefiore correspondence has distinctive branding missing from the Tele-Computer Systems letters. In trademark cases, this Court has questioned the efficacy of disclaimers, and required that at a minimum they be prominent and unambiguous. *Profitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.,* 314 F.3d 62, 70-71 (2d Cir. 2002). In *Maguire,* this Court

---

17) that it is proper to consider the impact of a series of collection letters rather than each letter individually. However, neither these nor any other cases suggest that an unsophisticated consumer is charged with noticing and recalling trivial details in letter #1 which allegedly contradict the plain message of letter #2.

cited with approval the Federal Trade Commission Staff Commentary on the
FDCPA, 53 Fed. Reg. 50097, 50102 (December 13, 1988), which states that there
is no violation where "the creditor's correspondence is clearly labeled as being
from the 'collection unit of the (creditor's name).'" (*Maguire*, 147 F.3d at 237).
Nothing Montefiore points to would come close to satisfying either the standard of
trademark cases or the standard used by the FTC.

Furthermore, Montefiore's arguments are fundamentally at odds with the
purpose of the FDCPA. Montefiore asks this Court to approve of a practice in
which a creditor creates a letterhead and format clearly appearing to come from a
third-party collection agency but can escape liability by sprinkling ambiguous
clues in the letter so it can argue that the consumer should have realized the letter
was not really from a third-party collection agency. Such behavior is calculated
to deceive, and allowing it serves no legitimate purpose. Montefiore actually
argues that a consumer who assumes that the entity whose name appears on a
letterhead is in fact the entity responsible for the letter is engaged in an
"unreasonable misinterpretation of [the] collection notices" (Def.Br., p. 18) – a
position that beggars belief. "There is no duty resting upon a citizen to suspect the
honesty of those with whom he transacts business. Laws are made to protect the
trusting as well as the suspicious. The best element of business has long since

decided that honesty should govern competitive enterprises, and that the rule of caveat emptor should not be relied upon to reward fraud and deception." *FTC v. Standard Education Society*, 302 U.S. 112, 116 (1937).

By sending collection letters that appear to come from a third-party collection agency called "Tele-Computer Systems" and not Montefiore, Montefiore "use[d] any name other than [its] own which would indicate that a third person is collecting or attempting to collect such debts," 15 U.S.C. §1692a(6). It also violated multiple substantive prohibitions of the FDCPA, including "The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization" (15 U.S.C. §1692e(14)) and the general prohibitions of deceptive collection conduct in §1692e (preface) and §1692e(10). Finally, it failed to make the disclosures required by 15 U.S.C. §1692e(11) and §1692g.

## IV.    MONTEFIORE'S OTHER CONTENTIONS LACK MERIT

### A.    The "False Name" Violation Does Not Require the Involvement of a Third Party

Montefiore disingenuously asserts that it did not "use" a false name because "Montefiore did not hire or retain any third party to collect its debt," citing *Vincent v. Money Store,* 736 F.3d 88, 100 (2d Cir. 2013). (Def.Br., p. 20-22)   In *Vincent,* the Court held that a "false name" violation was committed where a creditor paid a law firm a small amount per letter to send out collection  notices without exercising any real professional judgment.  However, nothing in *Vincent* or the text of the statute requires that a creditor involve a real third party in order to commit a "false name" violation.  Certainly, no third party was involved in *Maguire.*  A creditor named Montefiore that sends out collection letters under the name "Tele-Computer Systems" which omit Montefiore's signature branding certainly "uses any name other than [its] own which would indicate that a third person is collecting or attempting to collect such debts," 15 U.S.C. §1692a(6).

### B.    This Case Does Not Involve the Consistent Use of a Trade Name for Both Performing Services and Collecting for Those Services

Montefiore also misstates the law  when it asserts that "a creditor does not become liable under the false name exception solely because it uses something other than its legal name in its debt collection efforts."  (Def.Br., p. 20) It relies on

-18-

*Scalabrini v. PMAB, LLC*, 18cv11152, 2020 U.S. Dist. LEXIS 37472, at *11-12 (S.D.N.Y. Mar. 3, 2020), where a Florida hospital with the legal name of Baptist Hospital, Inc., used the assumed names of Gulf Breeze Hospital, GBH, and Baptist Gulf Breeze Hospital. "GBH," the name which the consumer claimed to satisfy the "false name" exception, was a registered "doing business as" name in Florida for Baptist Hospital, Inc. Critically, it was used both when the medical services were rendered and when efforts were made to collect for those services. "Plaintiff describes GBH as the entity where the medical procedures giving rise to Baptist's debt collection efforts were performed." (2020 U.S. Dist. LEXIS 37472, at *12) "Every communication described in the Complaint as having been initiated by Baptist was done in the name of GBH." (*Id.*) The court held that "Plaintiff does not plausibly allege that he was misled into believing that the calls and notices he received were coming from a third-party unrelated to the creditor." (2020 U.S. Dist. LEXIS 37472, at *14)

The *Scalabrini* case did not involve the use of one name and trade style when performing services and a totally different name and trade style when collecting for the services. It was in this context that the court stated that "a creditor does not become liable under the false name exception solely because it uses something other than its legal name in its debt collection efforts." The

-19-

***consistent*** use of trade names is common and proper, and "[t]he relevant question is whether the least sophisticated consumer, in seeing a different name, would have the false impression that a third party was collecting the debt." (2020 U.S. Dist. LEXIS 37472, at *11-12)

In the *Scalabrini* case, there was no false impression that an entity other than the one that had performed the medical services had become involved. In this case, precisely such an impression is created when a patient first receives bills with the name and signature branding of Montefiore and then receives dunning letters from "Tele-Computer Systems" without the signature branding. This case is one where "the least sophisticated consumer, in seeing a different name, would have the false impression that a third party was collecting the debt."[8]

---

[8] *Button v. GTE Serv. Corp.*, 1:96cv383, 1996 U.S. Dist. LEXIS 16971, at *1-2, 1996 WL 943904, at *2 (W.D. Mich. Oct. 15, 1996), which Montefiore also cites (Def.Br., p. 20), was a case where a consumer "incurred debt to GTE Telephone Operations and now complains of the manner in which defendant GTE Service Corporation attempted to collect the debt." The court concluded that the communications were obviously from GTE. The communications are neither reproduced nor described in the opinion, and documents of that vintage are not retrievable from ECF, either from the district court file or the appeal that was filed and dismissed.

**C.  Plaintiff Need Not Prove Intent to Deceive, Although Montefiore's Witness Admitted Intent**

*Scalabrini* also refutes Montefiore's contention that this type of violation requires intent to deceive.  Except for provisions expressly imposing a requirement of a mental state or negligence, e.g., 15 U.S.C. §1692e(8) ("Communicating or threatening to communicate to any person credit information which is known or which should be known to be false . . . "), the "FDCPA is a strict liability statute," *Vangorden v. Second Round, LP,* 897 F.3d 433, 436-37 (2d Cir. 2018). *Scalabrini* makes clear that the key is whether the defendant's conduct creates a "false impression that a third party was collecting the debt," not whether the defendant acted with intent to deceive.

 In any event, there is ample evidence of  intent to deceive.  Montefiore departed from its signature branding and style manual, which expressly addresses communications by all departments of Montefiore and had been in force for years prior to the letters at issue.  Montefiore's representative testified that the Tele-Computer Systems letters were created  because it was less expensive for Montefiore to send Tele-Computer Systems letters than to send the debts to an outside collection agency.  (App. 884;  McNiff Dep. Tr. p. 42, lines 24-25; p. 43, lines 1-7).   Following the creation of the Tele-Computer System letters,  the

-21-

number of accounts Montefiore sent to real third party collection agencies
decreased (App. 888, McNiff Dep. Tr. p. 46, lines 9-25; p. 47, lines 1-9)  Thus, the
Tele-Computer Systems letter was more effective at getting consumers to pay past
due account balances than the usual Montefiore billing statements.  The only
conceivable reason for this is that consumers were misled by the Tele-Computer
Systems letters into believing that their debts had been escalated to an outside
collection agency.

### D.    Other Cases Cited by Montefiore Do Not Help it

Montefiore cites a number of cases which are not factually similar to the
present case and do not help it.

1.    In *Marcotte v. Bank of America,* 14cv2773, 2015 U.S. Dist.
LEXIS 60976, 2015 WL 2184369 (S.D. Tex. May 11, 2015), the consumers
bought a timeshare with an RCI Elite Rewards credit card issued and serviced first
by Bank of America and then by Barclays Bank Delaware.  They asserted, among
other things, an FDCPA claim against Barclays, alleging that it was a debt
collector by virtue of the "false name" portion of the definition. They claimed that
monthly statements referred to "RCI" but not "Barclays." In dismissing the claim,
the Court relied on the fact that each monthly "RCI" statement said "Your credit
card is issued by Barclays Bank Delaware" and contained numerous other

-22-

references to Barclay's web site to both view account activities and make payments. It appears to have been a typical "private branding" situation, where both the issuer of the card and the merchant are identified.

      2.    In *Porter v. Wachovia Dealer Services, Inc.*, 07cv592, 2007 U.S. Dist. LEXIS 69151, at *10, 2007 WL 2694470 (D. Or. Sep. 12, 2007), the plaintiff alleged that creditor WFS was using the name Wachovia Dealer Services to collect its debts. In fact, WFS had changed its name to Wachovia Dealer Services and sent all customers, including Plaintiff, a notice stating: "It's Official [¶] Our new name is Wachovia Dealer Services. [¶] In 2006, WFS Financial joined the Wachovia family, and our name is now Wachovia Dealer Services. You'll begin to see our new logo, and you'll find us online at wachoviadealer.com, our new Web site address." For Montefiore to cite this case for the proposition (Def.Br., p. 26) that directing consumers to make checks payable to an entity dispels any confusion as to the source of a collection demand exceeds the bounds of legitimate advocacy. If anything, the decision illustrates how businesses that wish to avoid confusion upon adopting a new name and transfer good will from the old name to the new one should go about doing so.

      3.    In *Colman v. North Shore Health Sys.,* 97cv1871, 1998 U.S. Dist. LEXIS 23428, *17, 1998 WL 34077715 (E.D.N.Y. June 19, 1998), the court

held that North Shore University Hospital was not using the "false name" of

Regional Claims Recovery Service where, although RCRS was an affiliate, it "has

a separate location away from the Hospital site, its own employees, and clients

other than the Hospital. It charges the Hospital the same fees charged to other

clients, and its day-to-day operations are run by its own Executive Director." This

is consistent with the Federal Trade Commission Staff Commentary: "A creditor

does not violate this provision where an affiliated (and differently named) debt

collector undertakes collection activity, if the debt collector does business

separately from the creditor (e.g., where the debt collector in fact has other clients

that he treats similarly to the creditor, has his own employees, deals at arms length

with the creditor, and controls the process himself)." (53 Fed. Reg., at 50107)

Montefiore does not claim that any of these things are true for Tele-

Computer Systems. The *Colman* case did not turn on the format of bills, as

claimed at Def.Br., p. 26, but on the fact that RCRS was actually a separate

collection agency.

4. Montefiore cites *Mahan v. Laboratory Corp. of America*,

10cv00426, 2011 U.S. Dist. LEXIS 24324, at *4, 2011 WL 836674 (S.D. Ala.

Mar. 4, 2011), where "On the heading of the past due notices, the creditor,"

Laboratory Corporation of America, "printed in large orange letters the name

'LCA COLLECTIONS' and underneath in smaller black letters stated 'A Division of Laboratory Corporation of America.'" This teaches that Montefiore could have avoided any problem by using a letterhead that clearly stated, "Tele-Computer Systems, a Division of Montefiore Medical Center."  This is again consistent with the Federal Trade Commission Staff Commentary, cited with approval in *Maguire*, 147 F.3d at 237:

> 2. <u>Creditor misrepresentation of identity</u>. A creditor may not use any name that would falsely imply that a third party is involved in the collection. The in-house collection unit of "ABC Corp." may use the name "ABC Collection Division," but not the name "XYZ Collection Agency" or some other unrelated name.  (53 Fed. Reg., at  50107)

Again, we have a decision illustrating how businesses that wish to avoid deceiving consumers should go about doing so, and a defendant who insists on conducting itself otherwise.

   5. Montefiore cites App. 732 for the proposition that Rubin "never claimed any confusion about" who he was dealing with after calling the number on the letter.  In fact, Mr. Rubin thought the "Tele-Computer Systems" letter was from "Tele-Computer Systems."  (App. 1015, Rubin Dep. Tr., p. 87, lines 3-7)  Mr. Rubin wound up speaking with a person who identified herself as a Montefiore employee (App. 732-33).  This does not mean that the letter is not misleading.  Deception cannot be used to induce contact even if the truth is

-25-

eventually revealed. *Encyclopaedia Britannica, Inc. v. FTC*, 605 F.2d 964, 971 (7th Cir. 1979).

## V.    CONCLUSION

For the reasons stated above and in our opening brief, this Court should reverse the judgment appealed from and hold that by sending the Tele-Computer Systems letter, Montefiore used a name other than its own and gave the false impression that a third party was attempting to collect the Montefiore debt. As such, Montefiore is subject to liability under the false name provision of the FDCPA and violated 15 U.S.C. §1692e by engaging in misleading practices. The Court should remand for further proceedings.

Respectfully submitted,

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com
T:\35537\Appeal\Appellant's Reply Brief  --  TEXT_Appeal.wpd

-26-

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE
## REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed.R.App.P.32(a) because: According to the word count feature of the program by which it was prepared, this brief contains 5576 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(f).

2. This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(5) because: This brief was prepared in proportionally spaced typeface using WordPerfect X6, in Times New Roman, font size 14.

Dated: March 11, 2021

Respectfully submitted,

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

T:\35537\Appeal\Appellant's Reply Brief -- end parts_Appeal.WPD

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on March 11, 2021 a copy of the foregoing document was filed electronically using the Court's CM/ECF system.

I further certify that three copies of the foregoing were sent to the Clerk of the Second Circuit Court of Appeals pursuant to Local Rule 31.1 and one copy was sent to the following via U.S. Mail:

Wiggin and Dana LLP
1 Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06510


s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603-3593
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com